# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT F. CAVOTO, | ) | |
| | ) | |
| Plaintiff, Counter-Defendant, | ) | |
| | ) | No. 08 C 6957 |
| v. | ) | |
| | ) | |
| MARY LOU HAYES, | ) | HONORABLE DAVID H. COAR |
| | ) | |
| Defendant, Counter-Plaintiff. | ) | |

## MEMORANDUM OPINION AND ORDER

Mary Lou Hayes filed a Form 1099-C information return with her 2006 federal income taxes, in which she reported her cancellation of unpaid debts allegedly owed to her by Robert F. Cavoto. Cavoto filed suit, claiming, *inter alia*, that Hayes's filing was fraudulent and actionable *per se* under § 7434 of the Internal Revenue Code, since Hayes is not an "applicable entity" under § 6050P of the Code and is therefore prohibited from filing a Form 1099-C. *See* 26 U.S.C. §§ 6050P, 7434. In her motion for partial summary judgment, Hayes asks the court to resolve the narrow legal question whether a non-"applicable entity" commits actionable fraud simply by filing a Form 1099-C. For the reasons stated below, the court holds that the answer is "no" and accordingly grants Hayes's motion for partial summary judgment.

## BACKGROUND

Robert Cavoto is Mary Lou Hayes's former son-in-law. While Cavoto was married to Hayes's daughter, Hayes allowed the couple to have their own charge cards issued on Hayes's American Express account, which the couple used for business and

personal expenses.  The claim and counterclaim in this case arise from a disagreement concerning $30,238.51 in charges made to that account in 2002-03.  Cavoto and Hayes dispute virtually all of the material facts surrounding the charges in question, but these factual disputes are largely immaterial to the question of law before the court.  A brief summary of the terms of the dispute will provide some context for the present motion.

Hayes claims that in late 2002, Cavoto and his now-ex wife, Hayes's daughter Susan, could no longer afford to pay American Express for their charges to her account.  At Cavoto's request, Hayes made payments to American Express on the understanding that Cavoto would pay her back.  She has repeatedly tried to collect the money Cavoto owes her, to no avail.  On or around December 8, 2006, Hayes concluded that Cavoto's debt to her was uncollectable and cancelled it.  Cavoto, however, denies that there was ever any loan agreement in place; disputes that the charges in question are imputable to him, rather than to Hayes's daughter; insists that he has paid for all charges to the account for which he was ever personally responsible; maintains that Hayes reported her "cancellation" of his alleged debt in order to take an additional income tax deduction for 2006; and generally disputes all of Hayes's material allegations.  These background disputes will all be resolved by a jury in due course.

What is undisputed—and material to the present motion—is that Hayes reported the cancellation of a $30,238.51 debt, which she imputed to Cavoto, on her 2006 income tax return; took a nonbusiness bad-debt deduction, in the form of a $3,000 short-term capital loss, on her 1040 Schedule D; and further reported the cancellation of debt on a Form 1099-C.

On September 22, 2007, the IRS informed Cavoto that he might incur additional

tax liability for 2006 on account of Hayes's cancellation of his debt.  But on December 12, 2008, the IRS informed Cavoto that it would not pursue the collection of any additional income tax from him for 2006.  To date, the IRS has not in any way challenged Hayes's filing of the Form 1099-C as improper.

## **LEGAL STANDARD**

It is well established that the court may resolve a pure question of law on a motion for summary judgment.  *See, e.g.*, *In re Smith*, 966 F.2d 1527, 1529 (7th Cir. 1992).  Summary judgment is proper only where the moving party has established that there is no genuine issue of material fact and that she is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The court "must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party." *Allen v. Cedar Real Estate Group, LLP*, 236 F.3d 374, 380 (7th Cir. 2001).

## **ANALYSIS**

In his complaint, Cavoto alleges:

> Relative to the $30,258.51 in alleged Charges, the Information Return issued by the Defendant to the Plaintiff in this case is false and fraudulent **in one or more of the following respects**: . . . (e) Defendant is not an "applicable entity" that is required to file a cancellation of debt information return[] . . . .

(Compl. ¶14(e).)  Cavoto alleges, in effect, that the filing of a Form 1099-C by anyone other than an "applicable entity" is fraudulent and actionable *per se*.  In her motion for partial summary judgment, Hayes argues that she is entitled to judgment as a matter of law on the narrow ground of liability presented in ¶14(e) of the complaint.  The court agrees with Hayes.

Hayes is entitled to claim a deduction for the discharge of any nonbusiness bad debts.  *See* 26 U.S.C. § 166(d).  IRS Form 1099-C is an information return on which a

taxpayer reports the amount of a discharged debt and identifies the debtor. The filing of information returns is governed by § 6050P of the Internal Revenue Code, which provides, in relevant part, that "[a]ny applicable entity which discharges (in whole or in part) the indebtedness of any person during any calendar year *shall* make a return . . . ." 26 U.S.C. § 6050P(a) (emphasis added). An "applicable entity" is a governmental agency, a financial institution, or other organization in the business of lending money. *Id.* § 6050P(c). Hayes concedes that she is not an "applicable entity" and that § 6050P does not require her to file a Form 1099-C. She argues only that § 6050P does not forbid her from doing so.

Cavoto argues that "the plain language of 6050P . . . is intended to restrict or limit" the filing of a Form 1099-C to applicable entities. On the contrary, the plain language of § 6050P does not forbid anyone from filing an information return; it merely says that applicable entities *shall*—that is, *must*—file a Form 1099-C when discharging a debt of at least $600. It simply does not follow that *only* applicable entities *may* file a Form 1099-C.

Cavoto also argues that "if Congress had intended to allow" a non-applicable entity to file a Form 1099-C, "it would have said so in 6050P." But Cavoto offers no reason to think that by requiring an applicable entity to file a Form 1099-C, Congress thereby meant to forbid others from doing so in the absence of an explicit permission. The court cannot impute this intention to Congress solely on the basis of an apparent—and strained—application of *expressio unius*, and Cavoto points to nothing in the legislative history, or elsewhere, that provides evidence of this supposed intent.

Neither the parties nor the court have been able to locate any binding, on-point

legal authority; a 1998 Service Center Advice written by the Assistant Chief Counsel to the IRS, however, addresses precisely the question whether a non-applicable entity may file a Form 1099-C and concludes that "(i)ndividuals or entities not required by section 6050P to file Form 1099-C may nevertheless voluntarily file such forms in appropriate circumstances." *See* SCA 1998-020, at*1.

The Advice noted, first of all, that "there is no specific prohibition in the Internal Revenue Code or the Income Tax Regulations that forbids the reporting of discharges of indebtedness by entities not required to report." *Id.* at *2. But the gain that a debtor realizes when a debt is discharged may be income for federal tax purposes. 26 U.S.C. 61(a)(12); *Commissioner v. Jacobson*, 336 U.S. 28, 39-40 (1949). Thus, "[s]uch reporting may encourage voluntary tax compliance and proper gross income inclusions." SCA 1998-020, at *2. Moreover, "[t]here are numerous instances where information returns are filed when not required," for instance, to report low-value interest payments or to discharge a guarantor, and filing an information return in any of these instances is not fraudulent simply because it is not mandatory. *Id.* Indeed, the IRS often encourages taxpayers to report information they are not required to report, for instance, in connection with interest payments below the threshold for mandatory reporting. *See id.* at *n.2. Cavoto attempts to distinguish the Advice on factual grounds, since the taxpayers in question were "private businesses that extend credit to their customers," whereas Hayes is not. *Id*. Nothing in the reasoning of the Advice depends on this particular fact; nor is the principle articulated by the Assistant Chief Counsel limited to such taxpayers. Cavoto's distinction is therefore immaterial.

The court finds the reasoning of the Advice persuasive, for two principal reasons.

*First*, Cavoto's argument entails that a taxpayer commits actionable fraud by filing a Form 1099-C even if she cancels a bona fide, uncollectable debt and takes a bad-debt deduction in strict compliance with the requirements of § 166(d) of the IRC. Such a taxpayer can hardly be said to "willfully file[] a fraudulent information return." *See* 26 U.S.C. § 7434(a). And the well-established general rule is that tax fraud of any variety requires an element of "intentional wrongdoing," which this scenario plainly lacks. *See, e.g.*, *Granado v. Commissioner*, 792 F.2d 91, 92-93 (7th Cir. 1986).

*Second*, while allowing taxpayers to file information returns they are not required to file may help promote honest reporting of gross income by debtors, Cavoto's proposed rule serves no substantial purpose. Cavoto points to no harm that the filing of a voluntary Form 1099-C would cause an individual debtor—provided that the disclosure is truthful and accurate. Nor does he point to any general difficulties this would cause the IRS, beyond the potential filing of some unnecessary papers.

Finally, Cavoto points out that, according to Hayes's deposition testimony, her daughter advised her that she must issue a Form 1099-C in order to take the bad-debt deduction on her 2006 tax return. But Cavoto does not explain how this fact bears on the issue before the court. Moreover, this fact tends to show, if anything, that Hayes filed a Form 1099-C because she erroneously believed that she was required to, i.e., that she did *not* "willfully file[] a fraudulent information return." That does not help Cavoto.

For these reasons, the court holds that the filing of a Form 1099-C by someone other than an applicable entity is not fraudulent or actionable *per se* under § 7434; nothing in § 6050P or any other applicable provision of the IRC forbids the voluntary filing of a truthful and accurate Form 1099-C. Hayes is therefore entitled to judgment as

a matter of law on the narrow ground of liability put forth in ¶14(e) of the complaint. The court emphasizes the narrow scope of its holding—that Cavoto cannot prove fraud *merely* by proving that Hayes filed a Form 1099-C in which she claimed to discharge Cavoto's alleged debt—and intimates absolutely no view as to whether Hayes filed an intentionally false, erroneous, or fraudulent return in any other respect alleged in the complaint. That is for a jury to decide.

## IV. CONCLUSION

For the reasons stated above, Hayes's motion for partial summary judgment is GRANTED.

Enter:

/s/ David H. Coar

_____

David H. Coar

United States District Judge

**Dated: October 19, 2009**